**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

CINDY JOCELYN,
*on behalf of herself and others similarly situated*,

      Plaintiff,

           v.

PVK, INC.,

      Defendant.

---

Case No.:

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

      Plaintiff CINDY JOCELYN, individually and on behalf of all other persons similarly situated in New York and the United States, by her undersigned attorneys, pursuant to this Class Action Complaint against the Defendant PVK, INC., alleges the following:

<u>**NATURE OF THE ACTION**</u>

      1.     Plaintiff CINDY JOCELYN (herein Plaintiff or "Plaintiff JOCELYN"), brings this class action against Defendant, PVK, INC. (herein "Defendant" or "PVK"), for the deceptive practice of marketing its Scarpetta 19.8 oz sauces (herein the "Products") as having "No Preservatives", when they actually contains the preservative citric acid:

        a.  Marinara Sauce (**Exhibit A**)
        b.  Arrabbiata Sauce (**Exhibit B**)
        c.  Puttanesca Sauce (**Exhibit C**)

    d.  Tuscan Vodka (**Exhibit D**)
    e.  Cherry Tomato (**Exhibit E**)
    f.  Pink Pesto (**Exhibit F**)
    g.  Any other Scarpetta product that claims to have "No Preservatives" despite containing citric acid, and/or any other preservatives.

2.    The false misrepresentations are made both on the Products' packaging and online.

3.    By marketing the Products as having "No Preservatives", Defendant wrongfully capitalizes on and reaps enormous profits from consumers' strong preference for food products made free of preservatives.

4.    Plaintiff JOCELYN brings this proposed consumer class action on behalf of herself and all other persons nationwide who, from the applicable limitations period up to and including the present ("Class Period"), purchased Defendant's Products for consumption.

5.    Defendant violates statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent, unconscionable trade and business practices, and false advertising. These statutes are:

1) Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, *et seq.;*
2) Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.;*
3) Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq.;*
4) Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.;*
5) California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. & Prof Code § 17200, *et seq.;*
6) Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.;*
7) Connecticut Unfair Trade Practices Act, ConnStat § 42-110a, *et seq.;*
8) Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*
9) District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.;*
10) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.;*
11) Georgia Fair Business Practices Act, § 10-1-390 *et seq.;*
12) Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1*, et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.;*
13) Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*
14) Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.;*
15) Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, *et seq.;*
16) Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq.;*
17) Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*
18) Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*

19) Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § § 51:1401, *et seq.;*
20) Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq,,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*
21) Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.;*
22) Massachusetts Unfair and Deceptive Practices Act, Mass. Laws ch. 93A;
23) Michigan Consumer Protection Act, § § 445.901, *et seq.;*
24) Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*
25) Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*
26) Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*
27) Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*
28) Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.;*
29) Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*
30) New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq. ;*
31) New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 *1, et seq.;*
32) New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 *1, et seq.;*
33) New York Deceptive Acts and Practices Act,Law §§ 349, *et seq.;*
34) North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.;*
35) North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, *et seq.;*
36) Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq.;*
37) Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*
38) Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.;*
39) Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § § 201-1, *et seq.;*
40) Rhode Island Unfair Trade Practices And Consumer Protection Act, R.ILaws § 6-13.1-1, *et seq.;*
41) South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.;*
42) South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 *1, et seq.;*
43) Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq.;*
44) Texas Stat. Ann. §§ 17.41, *et seq.,* Texas Deceptive Trade Practices Act, *et seq.;*
45) Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.;*
46) Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*
47) Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, *et seq.;*
48) Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.;*
49) West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*
50) Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, *et seq.;*
51) Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, *et seq.*

6.      Defendant has been unjustly enriched as a result of its conduct. For these reasons,

Plaintiff seeks the relief set forth herein.

## JURISDICTION AND VENUE

7.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

8.      Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

9.      Furthermore, this court has personal jurisdiction over Defendant because its Products are advertised, marketed, distributed, and sold throughout New York State. Defendant engages in the wrongdoing alleged in this Complaint throughout the United States, including New York State. Defendant is authorized to do business in New York State, and Defendant has sufficient minimum contacts with New York and/or otherwise has intentionally availed itself of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant engages in substantial and not isolated activity within New York State

10.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, and the Defendant has caused harm to class members residing in this District.

## PARTIES

*Plaintiff*

11.      Plaintiff JOCELYN is, and at all times relevant hereto has been, a citizen of the State of New York, and resides in Kings County. During the Class Period, Plaintiff JOCELYN

purchased the 19.8 oz. Scarpetta Marinara Sauce for personal consumption. Plaintiff JOCELYN purchased the sauce in Nassau County for the premium price of $7.99. Plaintiff JOCELYN made this purchase in reliance on the representation on the container. As a result of Defendant's deceptive conduct, Plaintiff JOCELYN was injured when she paid money for a sauce that did not deliver the qualities it promised, and misled her as to its contents. She would not have purchased the sauce had she known the truth. Plaintiff JOCELYN is willing to purchase the Products in the future, but, she could not rely on the truthfulness of the packaging should she encounter the Products in the future, absent corrective changes to the packaging.

*Defendant*

12.     Defendant PVK, Inc. is a corporation organized under the laws of Massachusetts with its headquarters at 86 Sanderson Ave, Lynn MA 01902, and address for service of process at 126 Kilsyth RD. # 3, Brighton MA, 02135.

13.     Defendant develops, markets, and sells food products under the "Scarpetta" brand name throughout the United States. The advertising for the Products, relied upon by Plaintiff and the class, are prepared and/or approved by Defendant and its agents, and are disseminated by Defendant and its agents through advertising containing the misrepresentations alleged herein. The advertising for the Products is designed to encourage consumers to purchase the Products and misleads the reasonable consumer, i.e. Plaintiff and the Class. Defendant owns, manufactures, distributes, creates, and/or authorizes the unlawful, fraudulent, unfair, misleading and/or deceptive labeling and advertising for the Products.

## FACTUAL ALLEGATIONS

**Defendant Markets Their Products As Free of Preservatives Even Though They Contain The Preservative Citric Acid**

14.     The front labels of the Products represent that the products have "No preservatives" when they actually contain the preservative citric acid.

15.     Citric acid is a preservative as the term is defined by the FDA in 21 C.F.R. § 101.22(a)(5):  "The term *chemical preservative* means any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties."

16.     The MacMillan Dictionary defines "tends" as "to usually do a particular thing," as in "He tends to exaggerate" or "The gym tends to get very busy at around six o'clock."[1]  The scientific evidence and FDA statements cited below establish that citric acid tends to prevent or retard the deterioration of food. This remains the case regardless of the subjective purpose for which this substance is added to the Product. Citric acid does not fall into any of the regulatory exemptions from the definition of a preservative.

17.      The FDA expressly classifies citric acid as a preservative in its Overview of Food Ingredients, Additives, and Colors, on the FDA website:

---

[1] http://www.macmillandictionary.com/us/dictionary/american/tend (last accessed 01/03/2018)

| Types of Ingredients | What They Do | Examples of Uses | Names Found on Product Labels |
|---|---|---|---|
| **Preservatives** | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | Ascorbic acid, **<u>citric acid</u>**, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |

http://www.fda.gov/Food/IngredientsPackagingLabeling/FoodAdditivesIngredients/ucm094211.htm. (last accessed 07/05/2017).

18.     The FDA's classification of citric acid as a preservative is further confirmed by its Warning Letter, dated October 6, 2010, to the manufacturer of the Chiquita brand "Pineapple Bites with Coconut" and "Pineapple Bites":

> The 'Pineapple Bites' and 'Pineapple Bites with Coconut' products are further misbranded within the meaning of section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservative ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions. 21 CFR 101.22.

*See* **EXHIBIT G**, FDA Warning Letter dated October 6, 2010 (emphasis added).

19.     Citric acid's status as a preservative is also acknowledged by insiders in the preservative manufacturing and distribution industries. FBC Industries, Inc., a manufacturer and supplier of FCC grade citric acid additives, acidulants, buffering agents and preservatives for the food and beverage industry describes citric acid's function: "Citric acid is the most commonly

used acidulant in the industry. As a food additive or food grade product, citric acid is used as a flavoring and preservative. The buffering properties of citrates are used to control pH and flavor."[2]

## Plaintiff's Claims Are Not Preempted By The FDCA

20.     Plaintiff's claims are not preempted by the FDCA because the definition of "preservative" as used herein is identical with that of the FDA (see above).  Moreover, FDA regulations specifically note that claims like " No Preservatives" are non-nutritive claims that are not governed by 21 C.F.R. § 101.13.  *See* 21 C.F.R. § 101.65(b)(2).  Since the FDA has not issued specific standards governing when "No Preservative" claims are either true or false, such representations fall outside the ambit of FDA regulations.  Accordingly, Plaintiff's claim cannot possibly be preempted. *See Bimont v. Unilever U.S., Inc.*, No. 14-CV-7749 (JPO), 2015 U.S. Dist. LEXIS 119908, at *6 (S.D.N.Y. Sep. 9, 2015) ("[P]reemption does not preclude a state-law claim if the state requirement is outside the scope of the relevant federal requirements").

## Defendant's Misrepresentations Are Material To A Reasonable Consumer And Relied Upon By Plaintiff And The Class

21.     Plaintiff and Class members reasonably relied on Defendant's representations that the Products are free of preservatives.

22.     Defendant's "No Preservatives" misrepresentations are misleading and deceive reasonable consumers. At the point of sale, Plaintiff and Class members did not know, and had no reason to know, that the Products are misbranded as set forth herein. "Misleading" is judged in reference to "the ignorant, the unthinking and the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951). A representation that a product has "No Preservatives" is material to a reasonable consumer when

---

[2] http://www.fbcindustries.com/Citric_Acid.aspx (last accessed 01/03/2018)

deciding to purchase them. Plaintiff did, and a reasonable consumer would, attach importance to whether Defendant's Products have "No Preservatives" because it is common knowledge that consumers prefer to avoid foods with potentially unhealthy additives (see consumer behavior research below).

**Defendant Has An Intent To Mislead**

23.     Defendant would not have included the representations on the front labels of the Products if these representations would not influence consumer behavior.

24.     By representing that the Products have "No Preservatives", Defendant seeks to capitalize on consumers' preference for less processed foods with fewer additives and the association between such products and a wholesome way of life. Consumers are willing to pay more for less processed products with no additives because of this association, as well as the perceived higher quality, health, and safety benefits associated with products labeled as being free of preservatives.

25.     The marketing research firm Mintel reports that more and more Americans are concerned to avoid food containing preservatives:

> Foods bearing "free-from" claims are increasingly relevant to Americans, as they perceive the products as closely tied to health. New research from Mintel reveals that **84 percent of American free-from consumers buy free-from foods because they are seeking out more natural or less processed foods**. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent).

> Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent).[3]

---

[3] http://www.mintel.com/press-centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed (last accessed 01/03/2018)

26.     Alternet.org reports on research that shows that most Americans are willing to pay a premium price for healthier food options:

> Not only are consumers increasingly seeking out wholesome foods, they are willing to pay a premium for them. According to Nielsen's 2015 Global Health & Wellness Survey that polled over 30,000 people online, 88 percent of Americans are willing to pay more for healthier foods. Global sales of healthy food products are estimated to reach $1 trillion by 2017, according to Euromonitor.
>
> When it comes to what consumers will be seeking out more of over the coming year, it may amount to single word. "Just think of the word no," Seifer said. "No preservatives, no additives, no growth hormones."[5]

27.     Defendant has a natural interest in misrepresenting its Products as free of preservatives given these trends addressed above, despite the presence of citric acid. The Products' misrepresentations provide a clear marketing advantage over competitors that do not engage in such deceptive conduct.

28.     Defendant's intent to mislead is proven by the labeling of its' very own 19.8 oz. Scarpetta Barely Bolegnese Sauce (herein "Bolegnese sauce"). *See* **Exhibit H**.

29.     Defendant's Bolegnese sauce rightfully bares the "No Preservatives" claim on its label given that it does not contain citric acid or any other preservative. The Bolegnese sauce shows that Defendant knows how to properly label its Products.

30.     Defendant knows that its "No Preservatives" representations on the Products are false, and intends that they be relied upon by Plaintiff and the Class. Upon information and belief, Defendant employs food scientists who are familiar with the basic properties of citric acid.

---

[5] http://www.alternet.org/food/8-food-trends-watch-2016 (last accessed 07/05/2017)

**Plaintiff and the Class Were Injured As The Result Of Defendant's Deceptive Practices**

31.     Plaintiff and the Class were injured when Defendant denied them the full benefit of their bargain. They paid money for Products that were represented to them as preservative-free, and then received Products that were preservative-laden, which have significantly less value. Plaintiff and the Class were thus deprived of the benefit of their bargain. They would not have purchased the Products, or would only have been willing to pay less for it, had they known the truth. Plaintiff and the Class were injured in an amount up to the purchase price, the difference between the actual value of the Products and the value of the Products as misrepresented to them by Defendant, to be determined by expert testimony at trial. Defendant's very inclusion of "No Preservatives" on the Products' front labels is an acknowledgment that this increases the Products' perceived value. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) ("the issue of 'price premium' was relevant because it showed that plaintiffs paid more than they would have for the good but for the deceptive practices of the defendant-sellers"); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 U.S. Dist. LEXIS 107097, at *51-52 (S.D.N.Y. Aug. 11, 2016) ("[I]n his Complaint, Plaintiff seeks monetary damages on the grounds that he 'would not have paid the premium price he paid' to buy the Products had he 'known the truth.'…Case law makes clear that this is sufficient at the motion-to-dismiss phase for a § 349 claim to survive."); *Koenig v. Boulder Brands, Inc.*, 995 FSupp. 2d 274, 288-89 (S.D.N.Y. 2014) (Plaintiffs claim that, but for Defendants' "unfair and deceptive practices," they—and the putative class—would not have purchased, or paid a price premium for, Smart Balance. Compl. ¶¶ 7, 81. Indeed, Plaintiffs claim that they paid price premiums specifically 'based on Defendants' misrepresentations,' and allege that they deserve damages in the amount of either the purchase prices, or the price premiums, that

they paid for Smart Balance. Id. ¶ 81. Accordingly, the Court finds that Plaintiffs have adequately

alleged injury under GBL § 349…”).

## CLASS ACTION ALLEGATIONS

32.     Plaintiff  JOCELYN brings this action as a class action pursuant to Rule 23 of the

Federal Rules of Civil Procedure on behalf of the following class (the “Nationwide Class”):

> All persons or entities in the United States who made retail
> purchases of the Products in the United States during the applicable
> limitations period for personal consumption and not resale, and/or
> such subclasses as the Court may deem appropriate (the
> “Nationwide Class”).

In the alternative, Plaintiff JOCELYN seeks to represent a class consisting of the following

subclass:

> All persons or entities in New York who made retail purchases of
> the Products in New York during the applicable limitations period
> for personal consumption and not resale, and/or such subclasses as
> the Court may deem appropriate (the “New York Class”).

33.     The proposed Classes exclude current and former officers and directors of

Defendant, members of the immediate families of the officers and directors of the Defendant,

Defendant's legal representatives, heirs, successors, assigns, any entity in which they have or have

had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

34.     Plaintiff reserves the right to revise the class definition based on facts learned in the

course of litigating this matter.

35.     This action is proper for class treatment under Rules 23(b)(1)(B) and 23(b)(3) of

the Federal Rules of Civil Procedure. While the exact number and identities of other Class

members are unknown to Plaintiff at this time, Plaintiff is informed and believes that there are

thousands of Class members. The Classes are so numerous that individual joinder of all Class

members is impracticable.

12

36.     Common questions of law and fact arise from Defendant's conduct described herein. Such questions are common to all Class members and predominate over any questions affecting only individual Class members. These include:

a.     whether labeling "No Preservatives" on Products containing citric acid is false and misleading;

b.     whether Defendant engages in  marketing practices intended to deceive consumers by labeling "No Preservatives" on  Products containing citric acid;

c.     whether Defendant deprived Plaintiff and the Classes of the benefit of their bargain because the Products purchased are different than what Defendant warranted;

d.     whether Defendant deprived Plaintiff and the Classes of the benefit of their bargain because the Products they purchased have less value than what was represented by Defendant;

e.     whether Defendant mislead Plaintiff and the Classes to purchase a substance that was other than what was represented by Defendant;

f.     whether Defendant has been unjustly enriched at the expense of the Plaintiff and other Class members by its misconduct;

g.     whether Defendant must disgorge any and all profits they have made as a result of its misconduct; and

h.     whether Defendant should be barred from marketing the Products as having "No Preservatives."

37.     Plaintiff's claims are typical of those of the Class members because Plaintiff and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiff purchased one of Defendant's Products and sustained similar injuries arising out

of Defendant's conduct in violation of the law. Defendant's unlawful, unfair, and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of the Classes are caused directly by Defendant's wrongful misconduct. In addition, the factual underpinning of Defendant's misconduct is common to all Class members, and represents a common thread of misconduct resulting in injury to all members of the Classes. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the members of the Classes and are based on the same legal theories.

38.     Plaintiff will fairly and adequately represent and pursue the interests of the Classes. Plaintiff understands the nature of her claims herein, has no disqualifying conditions, and will vigorously represent the interests of the Classes. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Classes. Plaintiff has retained highly competent and experienced class action attorneys to represent her interests and those of the Classes. Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Classes, and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Classes.

39.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

40.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refuses to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

41.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

42.     The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all members of the Classes, although certain Class members are not parties to such actions.

43.     Defendant's conduct is generally applicable to the Classes as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Classes as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Classes as a whole appropriate.

**CAUSES OF ACTION**

**COUNT I**

**INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349**

**(DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

44.     Plaintiff JOCELYN realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

45.     Plaintiff JOCELYN brings this claim on behalf of herself and the other members of the Nationwide Class for an injunction for violations of New York's Deceptive Acts or Practices Law ("NY GBL§ 349").

46.     Alternatively, should the Court not certify Plaintiff's proposed Nationwide Class, Plaintiff JOCELYN brings this claim individually and on behalf of the members of the New York Class, for an injunction for violations of New York's Deceptive Acts or Practices Law ("NY GBL § 349").

47.     NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

48.     Under the NY GBL § 349, it is not necessary to prove justifiable reliance.  ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 … claims, it was error.  Justifiable reliance by the plaintiff is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

16

49.     Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in their own name to enjoin such unlawful act or practice, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

50.     The practices employed by Defendant, whereby Defendant advertises, promotes, and markets that its Products contain "No Preservatives" are unfair, deceptive, misleading and in violation of the NY GBL § 349.

51.     The foregoing deceptive acts and practices are directed at consumers.

52.      Defendant should be enjoined from marketing its products as containing "No Preservatives" as described above pursuant to NY GBL § 349.

53.     Plaintiff is at risk of several types of future injury, each of which justifies the imposition of an injunction. Plaintiff is no longer able to rely on Defendant's representations, regardless of whether they are true or false. Plaintiff may hesitate to purchase Defendant's Products even if it ceases its unlawfully labeling the Products with the "No preservative" misrepresentation. Plaintiff may hesitate to purchase Defendant's Products even if it begins manufacturing the Product without any added preservatives. If the Products are no longer sold with the "No preservative" representations or without any added preservatives, Plaintiff could not uninhibitedly take advantage of those Products because they have been led to believe that they contain preservatives.

54.     The 9th Circuit has recently embraced this approach to analyze injury in consumer fraud cases:

> We hold that a previously deceived consumer may have standing to seek an
> injunction against false advertising or labeling, even though the consumer now
> knows or suspects that the advertising was false at the time of the original purchase,
> because the consumer may suffer an "actual and imminent, not conjectural or
> hypothetical" threat of future harm. [*Summers v. Earth Island Inst.*, 555 U.S. 488,
> 493, 129 S. Ct. 1142, 1148 (2009).] Knowledge that the advertisement or label was
> false in the past does not equate to knowledge that it will remain false in the
> future. In some cases, the threat of future harm may be the consumer's plausible
> allegations that she will be unable to rely on the product's advertising or labeling
> in the future, and so will not purchase the product although she would like to. *See,
> e.g.*, [*Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012)]; *Lilly v.
> Jamba Juice Co.*, No. 13-cv-02998-JT, 2015 U.S. Dist. LEXIS 34498, 2015 WL
> 1248027, at *4 (N.D. Cal. Mar. 18, 2015) ("[U]nless the manufacturer or seller has
> been enjoined from making the same representation, [the] consumer . . . won't know
> whether it makes sense to spend her money on the product.").

*Davidson v. Kimberly-Clark Corp.,* 873 F.3d 1103, 1115 (9th Cir. 2017).

55.     The Court should follow the lead of California Federal Courts and recognize that a

plaintiff may be injured after they learn of a manufacturer's deception, even though they are

unlikely to fall victim to the exactly the same scheme again in exactly the same manner. To hold

otherwise would immunize manufacturers and render injunctive relief impossible in consumer

fraud class action lawsuits – if learning of a deception removed a plaintiff's standing to seek an

injunction, then wrongdoers could violate the law with impunity, defeating the purpose of

consumer protection statutes.

56.     Plaintiff JOCELYN, on behalf of herself and all others similarly situated,

respectfully demands a judgment enjoining Defendant's conduct, awarding costs of this

proceeding and attorneys' fees, as provided by NY GBL, and such other relief as this Court deems

just and proper.

**COUNT II**

**DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349**

**(DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

57.    Plaintiff JOCELYN realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

58.    Plaintiff JOCELYN brings this claim individually and on behalf of the other members of the Nationwide Class for violations of NY GBL § 349.

59.    Alternatively, should the Court not certify Plaintiff's proposed Nationwide Class, Plaintiff JOCELYN brings this claim individually and on behalf of the other members of the New York Class for Defendant's violations of NY GBL § 349.

60.     Defendant's business act and practices and/or omissions alleged herein constitute deceptive acts or practices under NY GBL § 349, which were enacted to protect consumers from those who engage in unconscionable, deceptive or unfair acts or practices in the conduct of any business, trade or commerce.

61.    The practices of Defendant described throughout this Complaint, were specifically directed to consumers and violate the NY GBL § 349 for, inter alia, the following reasons:

   a. Defendant knowingly and falsely represents and advertises that the Products contain "No Preservatives" with an intent to cause Plaintiff and members of the Classes to believe that they do not contain  preservatives, when they actually contain citric acid;

19

b.  Defendant caused Plaintiff and the Classes to suffer a probability of confusion and a misunderstanding of legal rights, obligations, and/or remedies by and through its conduct;

c.  Defendant made material representations and statements of fact to Plaintiff and the Classes that resulted in Plaintiff and the Classes reasonably believing the represented or suggested state of affairs are what they actually were; and the practices employed by Defendant, whereby Defendant advertises, promotes, and markets that its Product contains "No Preservatives" is unfair, deceptive, and misleading.

62.   Under the circumstances, Defendant's conduct in employing these unfair and deceptive trade practices are malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

63.   Defendant's actions impact the public interest because Plaintiff and members of the Classes were injured in exactly the same way as thousands of others purchasing the Products as a result of Defendant's generalized course of deception.

64.   The foregoing deceptive acts, and practices were directed at consumers.

65.   The foregoing deceptive acts, and practices caused Plaintiff and other Class members to suffer actual damages in the form of, *inter alia*, monies spent to purchase the Products. Plaintiff and other Class members are entitled to recover compensatory damages, statutory damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems appropriate. Damages can be calculated through expert testimony at trial.

**COUNT III**

**DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350**

**(FALSE ADVERTISING LAW)**

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

66. Plaintiff JOCELYN realleges and incorporates by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

67. Plaintiff JOCELYN brings this claim individually, as well as on behalf of members of the Nationwide class, for violations of NY GBL § 350.

68. Alternatively, should the Court not certify Plaintiff's proposed Nationwide Class, Plaintiff JOCELYN brings this claim individually and on behalf of the members of the New York Class for violations of NY GBL § 350.

69. Defendant has been and/or engages in the "conduct of … business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

70. New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …" N.Y. Gen. Bus. Law § 350-a(1).

71. Defendant caused to be disseminated throughout New York, through advertising, marketing and other publications, statements that are untrue and misleading.

72. Defendant's affirmative misrepresentation that the Products contain "No Preservatives" is material and substantially uniform in content, presentation, and impact upon

consumers at large. Consumers purchasing the Products were, and continue to be, exposed to Defendant's material misrepresentations.

73.     Defendant violates NY. Gen. Bus. Law § 350 because its' "No Preservatives" misrepresentations are material and likely to deceive a reasonable consumer.

74.     59. Plaintiff JOCELYN and members of the Classes have suffered an injury as a result of Defendant's false and misleading advertising.

75.     Pursuant but not limited to N.Y. Gen. Bus. Law § 350-e, Plaintiff JOCELYN and members of the Classes seek monetary damages (including actual damages, and minimum, punitive, or treble and/or statutory damages pursuant to GBL § 350-a(1)), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendant's unlawful conduct, any interest and attorneys' fees and costs.

## COUNT IV

## COMMON LAW FRAUD

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar common law of other states and the District of Columbia to the extent New York common law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

76.     Plaintiff JOCELYN realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

77.     Defendant intentionally makes materially false and misleading representations regarding the composition of the Product.

78.     Plaintiff JOCELYN and members of the Classes reasonably relied on Defendant's false and misleading representations. They did not know, and had no reason to

know, that the Products contain a preservative, and they would not have purchased the Products had they known they were mislabeled.

79.     Defendant intended that Plaintiff and the Classes rely on its misrepresentations.

80.     Plaintiff and members of the Classes have been injured as a result of Defendant's fraudulent conduct.

81.     Defendant is liable to Plaintiff and members of the Classes for damages sustained as a result of Defendant's fraud.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, individually and on behalf of all other similarly situated, seeks judgment against Defendant, as follows:

a.  An Order that this action be maintained as a class action, appointing Plaintiff as representative of the Nationwide Class and/or the New York Class in the alternative;

b.  An Order appointing the undersigned attorney as class counsel in this action;

c.  Restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

d.  All recoverable compensatory and other damages sustained by Plaintiff and the Classes;

e.  Actual and/or statutory damages for injuries suffered by Plaintiff and the Classes and in the maximum amount permitted by applicable law;

f.  An order (i) requiring Defendant to immediately cease its wrongful conduct as set forth in this Complaint; (ii) ordering Defendant to engage in a corrective advertising

campaign; and (iii) requiring Defendant to reimburse Plaintiff and all members of the

Classes the amounts paid for the Products;

g.  Statutory pre-judgment and post-judgment interest on any amounts;

h.  Payment of reasonable attorneys' fees and costs; and

i.  Such other relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of

herself and all others similarly situated, demand a trial by jury on all questions of fact raised by

the Complaint.

Dated: January 22, 2018

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

By:  ____/s/ C.K. Lee_____
        C.K. Lee, Esq.